NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0014n.06

No. 08-4418

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 11, 2010
LEONARD GREEN, Clerk

TRI-CORNER INVESTMENTS LLC,

     Plaintiff-Appellee,

v.

FIRST DEFENSE INTERNATIONAL GROUP,
INC.; CHRISTOPHER BADSEY,

     Defendants-Appellants,

and

JACK MALLORY; STEVE HODGES,

     Defendants.

On appeal from the United States
District Court for the Southern
District of Ohio

_____/

BEFORE:    RYAN, COLE, and CLAY, Circuit Judges.

     RYAN, Circuit Judge.     Tri-Corner Investments, LLC, filed a breach of contract suit against First Defense International Group, Inc. (FDIG), and its corporate officers in the United States District Court for the Southern District of Ohio, alleging federal diversity jurisdiction. After FDIG failed to answer the complaint, Tri-Corner filed a motion for default judgment, which was granted by the district court. FDIG filed a motion to vacate the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(1). The district court denied the motion after finding that FDIG had failed to establish excusable neglect for its failure

to answer Tri-Corner's complaint. We hold that the district court did not commit an abuse of discretion in denying FDIG's motion to vacate the default judgment.

## I.

FDIG is a California company that manufactures bullet-resistant products. The president of FDIG is Christopher Badsey, a named defendant in this case. In March 2007, Tri-Corner entered into a written agreement with FDIG to purchase eleven armored vehicles that were to be shipped to Nigeria on behalf of Tri-Corner. Tri-Corner made approximately $495,000 in wire transfers to FDIG as a deposit. Tri-Corner alleges that FDIG did not ship the vehicles as agreed. FDIG alleges in response that, under the terms of the purchase agreement, it was not required to ship the vehicles until it received the full payment. FDIG also allegedly notified Tri-Corner by email that Tri-Corner was responsible for obtaining proper customs documentation and that, without this documentation, FDIG could not ship the vehicles. Consequently, FDIG alleges that it did not ship the vehicles because payment in full was still lacking and because it did not have the proper customs documentation.

On October 9, 2007, Tri-Corner filed a complaint against FDIG and its corporate officers in the United States District Court for the Southern District of Ohio, alleging breach of contract, unjust enrichment, and fraud. Tri-Corner served FDIG by mailing a certified copy of the complaint to FDIG's California business address. The answer to the complaint was due on November 13, 2007. There is no dispute that service was effective and that FDIG failed to file an answer as required by Federal Rule of Civil Procedure 12(a)(1)(A).

In explaining the reason for its failure to file an answer to the complaint, FDIG states that the California address where FDIG was lawfully served is a "drop box" address that FDIG opened as a necessity. FDIG explains that since it is a federal contractor in the business of manufacturing defense-related items, it is involved in affairs of national security and is subject to certain security constraints. FDIG claims that because of this, it opened a "drop box" address and that its practice was to retrieve mail from this "drop box" every one to two weeks. In addition, FDIG explains that because of the security clearances required in FDIG's business, company policy stated that the mail would be opened only by the president, Badsey. FDIG contends that due to certain circumstances, including Badsey's absence from the country for an extended time period, the mail was not picked up for some time and FDIG did not learn about the lawsuit filed by Tri-Corner until after the entry of default judgment.

On November 16, 2007, three days after FDIG's answer to the complaint was due, Tri-Corner filed a motion for default judgment. On January 4, 2008, the district court granted the motion for default judgment. On February 1, 2008, the district court held a hearing on the question of damages. At this hearing, only counsel for Tri-Corner was present. At the close of the damages hearing, the district court awarded Tri-Corner $476,323.72 in compensatory damages and $476,323.72 in punitive damages, for a total sum of $952,647.44.

On February 18, 2008, three months after the answer was due, FDIG filed a motion to vacate the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(1), claiming excusable neglect. A hearing on the motion to vacate was held on March 25,

2008, with counsel for both sides present.  On September 22, 2008, the district court denied FDIG's motion, ruling that FDIG's failure to answer the complaint was not the result of excusable neglect.  FDIG then appealed to this court seeking relief from the default judgment.

## II.

We review a district court's decision to deny a motion to vacate a default judgment sought pursuant to Rule 60(b)(1) under the "abuse of discretion" standard.  Burrell v. Henderson, 434 F.3d 826, 831 (6th Cir. 2006).  "'Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment.'"  Amernational Indus., Inc. v. Action-Tungsram, Inc., 925 F.2d 970, 975 (6th Cir. 1991) (citation omitted).

## III.

A district court may set aside a default judgment pursuant to Federal Rule of Civil Procedure 60(b) on the grounds of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).  In United Coin Meter Co. v. Seaboard Coastline Railroad, 705 F.2d 839, 845 (6th Cir. 1983), this court set out three applicable factors in determining whether to vacate a default judgment:  "(1) whether the opposing party would be prejudiced; (2) whether the proponent had a meritorious claim or defense; and (3) whether the proponent's culpable conduct led to the default."  Weiss v. St. Paul Fire & Marine Ins. Co., 283 F.3d 790, 794 (6th Cir. 2002) (citing United Coin Meter, 705 F.2d at 845).  "[A] party seeking to vacate a default judgment under Rule 60(b)(1) must demonstrate first and foremost that the default did not result from his culpable conduct. . . .  Only if the moving

party makes this showing may the district court proceed to consider the other United Coin Meter factors." Weiss, 283 F.3d at 794. To show that the default did not result from culpable conduct, a party must demonstrate the requirements of Rule 60(b)(1)—that the default "'was the product of mistake, inadvertence, surprise, or excusable neglect.'" Id. (quoting Waifersong, Ltd. v. Classic Music Vending, 976 F.2d 290, 292 (6th Cir. 1992)).

Ascertaining whether neglect is excusable is an equitable determination taking into account all relevant circumstances, including the following factors set forth by the United States Supreme Court in Pioneer Investment Services Co. v. Brunswick Associates, 507 U.S. 380 (1993): "(1) the danger of prejudice to the other party, (2) the length of delay, (3) its potential impact on judicial proceedings, (4) the reason for the delay, and (5) whether the movant acted in good faith." Jinks v. AlliedSignal, Inc., 250 F.3d 381, 386 (6th Cir. 2001) (citing Pioneer Inv. Servs., 507 U.S. at 395).

The district court held that FDIG's failure to answer the complaint was not due to excusable neglect. The district court found that FDIG's explanation for its mail policy was unreasonable because FDIG failed to protect against mail going unread for long periods of time, even though the mail procedure was completely within FDIG's control. The district court found that FDIG had not presented a valid justification for their mail policy and failed to present an explanation why alternative means for ensuring the reading of mail were not used. The district court held that FDIG's reason for the delay weighed against finding excusable neglect. We agree with the district court that FDIG has failed to present a compelling explanation for why it neglected to ensure that mail accepted at FDIG's business address was read in a timely manner.

The district court also found that there was danger of prejudice to Tri-Corner because of the delay and possible future delay in obtaining a refund for the nearly $500,000 that Tri-Corner paid to FDIG. The district court also found that, while the delay in litigation was only a few months, the delay and its potential impact on judicial proceedings did not support FDIG's contention that its delay in answering the complaint was excusable. Only the final factor—whether FDIG acted in good faith—weighed in favor of FDIG. Balancing all these factors as required under the Pioneer case, the district court found that FDIG had failed to establish excusable neglect.

We cannot say, as we must to find an abuse of discretion, that we have a definite and firm conviction that the district court committed a clear error of judgment in coming to its conclusion. The district court weighed the Pioneer factors appropriately and did not abuse its discretion in finding that FDIG had failed to show excusable neglect.

Since FDIG had not demonstrated excusable neglect, the district court correctly declined to consider the other United Coin Meter factors of prejudice and the existence of a meritorious defense, and so do we. See Weiss, 283 F.3d at 794.

## IV.

We conclude that the district court did not commit an abuse of discretion by denying FDIG's motion to vacate the default judgment, and we **AFFIRM** the judgment of the district court.