DISTRICT TITLE, Plaintiff,

v.

Anita K. WARREN, et al., Defendants.

Civil Action No. 14–1808 (ABJ)

United States District Court, District of Columbia.

Signed 11/13/2015

Brian Wood Thompson, David Howard Cox, Jackson & Campbell, P.C., Washington, DC, for Plaintiff.

Matthew August LeFande, Matthew August LeFande Attorney at Law PLLC, Arlington, VA, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

AMY BERMAN JACKSON, United States District Judge

Plaintiff District Title, a real estate settlement company, was handling the sale of a property formerly owned by defendant Anita K. Warren when it erroneously transferred $293,514.44 to Warren instead of to the mortgage lender, non-party Wells Fargo Bank, N.A. Am. Compl. [Dkt. # 5] ¶¶ 9, 15. Plaintiff alleges that defendant Warren and her adult son, defendant Timothy Day, made off with the funds, spent them, and now refuse to pay them back. Aff. of Steven Sushner, Ex. B to Pl.'s Opp. to Defs.' Mot. for Summ. J. [Dkt. # 48] ¶¶ 16–27.

On August 28, 2015, plaintiff filed a motion seeking sanctions against defendants and their counsel related to their conduct during the discovery process. Pl.'s Mot. for Sanctions [Dkt. # 68]. To address plaintiff's motion, it is necessary to set forth the procedural background of this case in general, while focusing specifically on discovery:

September 2, 2014: Plaintiff filed a complaint in the Superior Court of the District of Columbia. Super. Ct. Compl. [Dkt. # 22] at 19.

October 29, 2014: Defendants removed the case to this Court. Notice of Removal [Dkt. # 1].

November 10, 2014: Plaintiff filed an amended complaint. Am. Compl. Count I, for breach of contract, is brought solely against defendant Warren. *Id.* ¶¶ 26–32. The remaining counts—for trover and conversion (Count II), unjust enrichment (Count III), and equitable and injunctive relief (Count IV) are brought against both defendants. *Id.* ¶¶ 33–62.

November 19, 2014: Plaintiff filed a motion for a preliminary injunction seeking to prevent any further dissipation of the funds. Pl.'s Mot. for Prelim. Inj. [Dkt. # 6].

December 4, 2014: Defendant Day moved to dismiss the entire complaint for a lack of subject matter jurisdiction and to dismiss certain counts for failure to state a claim under Rule 12(b)(6). Def. Day's Mot. to Dismiss [Dkt. # 10]. The 12(b)(1) motion was predicated in part on defendant Day's assertion that this Court could not exercise jurisdiction over the removed action if the jurisdiction of the Superior Court had not been properly invoked, and he asserted that there was no jurisdiction in Superior Court because that court did not have what he improperly labeled as subject-matter—as opposed to personal—jurisdiction over him under the D.C. long-arm statute. *Id.* at 3–7. Defendant Day also claimed that he had never been properly served. *Id.* at 7, 9. Day's motion to dismiss did not challenge plaintiff's standing to bring this case.

December 4, 2014: Defendant Warren moved to dismiss the state common law claims under Rule 12(b)(6), but did not move to dismiss the breach of contract claim. Def. Warren's Mot. to Dismiss [Dkt. # 11]. Warren's motion to dismiss did not challenge plaintiff's standing to bring this case.

December 9, 2014: Defendant Warren filed a motion to compel arbitration and to stay all other proceedings, invoking the arbitration clause contained in her contract with plaintiff.[1] Def. Warren's Mot. to Compel Arbitration & Stay Proceedings [Dkt. # 14]; *see also* Ex. 10 to Am. Compl. (the contract).

December 12, 2014: The Court heard argument on plaintiff's motion for a preliminary injunction. Min. Entry (Dec. 12, 2014). During the hearing, counsel for defendants questioned plaintiff's constitutional standing to bring the case even though there was no pending motion to dismiss on those grounds. *See* Hr'g Tr. at 52:2–6. The Court expressed its view that plaintiff had standing to pursue its claims in this diversity action. *Id.* at 52:7–9.

December 15, 2014: The Court granted plaintiff's motion for a preliminary injunction. Order (Dec. 15, 2014) [Dkt. # 21].

January 5, 2015: Defendants filed a motion to stay the preliminary injunction pending appeal. Mot. to Stay Prelim. Inj. Pending Appeal [Dkt. # 28] at 1. The motion relied in part on the claim that plaintiff lacked standing to pursue this case, and defendants complained about what they described as the "unexplained cursory dismissal of counsel's argument" on that point. Mem. in Supp. of Mot. to Stay Prelim. Inj. Pending Appeal [Dkt. # 28] at 5–7.

January 9, 2015: The Court denied defendants' motion to stay the preliminary injunction, Mem. Op. & Order (Jan. 9, 2015) [Dkt. # 29], observing that "[t]here is no question that plaintiff has standing to pursue its claims in this case," and defendants'

---

1. The Court notes that the motion to compel arbitration was filed only after the Court discovered the alternative dispute resolution clause of the contract in the course of its own review of the parties' pleadings, and then ordered the parties to submit filings addressing what, if any, impact the clause had on its ability to hear this case. *See* Min. Order (Dec. 4, 2014).

appeal was therefore "not likely to succeed on the standing issue." [2] *Id.* at 9.

March 6, 2015: Plaintiff filed a report on a discovery conference held by the parties pursuant to Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3 before any order had been issued requiring it to do so. Pl.'s Report on Conference Regarding Proposed Disc. & Briefing Schedule [Dkt. # 32]. In the report, plaintiff stated that the parties were unable to agree to a joint discovery plan because defendants' counsel took the position that the Court should resolve the pending motions to dismiss and for a stay pending arbitration first. *Id.* at 1. Plaintiff proposed a discovery schedule that would begin as soon as the Court entered a scheduling order. *Id.* at 2–3. Defendants did not file any response to plaintiff's report or propose a schedule for discovery of their own.

April 28, 2015: Plaintiff filed a motion for leave to take depositions *duces tecum* of defendants Warren and Day to perpetuate their testimony. Pl.'s Mot. for Leave to Take Deps. [Dkt. # 36]. Plaintiff stated that "[d]efendants' counsel has repeatedly referred, through pleadings and communications, to the Defendants' health conditions which give rise to a concern that they may not be available for depositions at a later date or for trial." Mem. of P. & A. in Supp. of Pl.'s Mot. for Leave to Take Deps. [Dkt. # 36–1]. Plaintiff noted that defendants' pleadings had described Warren as "elderly and infirm," and stated "[u]pon information and belief" that Day was suffering from cancer.[3] *Id.* at 5. Defendants opposed the motion on May 11, 2015. Opp. to Mot. for Deps. [Dkt. # 39]. Defendants opposed the motion on the grounds that the entire case should be dismissed for lack of standing, and they raised no medical concerns. *Id.*

May 19, 2015: The Court issued the following minute order: "In the event that the pending motions to dismiss have been resolved at or before the status conference

scheduled on June 4, 2015, the Court will take up the discovery schedule at that time. If defendants intend to object to the taking of their depositions within the ensuing 30 days, they should be prepared to provide the Court with specific information concerning their current medical conditions." Min. Order (May 19, 2015). No medical evidence has ever been provided to the Court.

June 1, 2015: The Court denied defendants' motions to dismiss and defendant Warren's motion to stay and compel arbitration. Mem. Op. & Order (June 1, 2015) [Dkt. # 40].

June 4, 2015: Since the pending dispositive motions had been decided on the merits, the Court adopted the schedule proposed by plaintiff in its report and authorized the initiation of discovery. Scheduling Order [Dkt. # 41].

June 5, 2015: The Court denied the motion to take the depositions in advance of the discovery period as moot. Min. Order (June 5, 2015).

June 8, 2015: Defendants did not embark on discovery but instead moved for summary judgment; the defendants asserted that the Court lacked subject-matter jurisdiction over this case because plaintiff did not have standing to pursue it. Mot. for Summ. J. [Dkt. # 43]. Defendants' theory was that although it was District Title that received and was supposed to disburse the funds at the settlement, it was District Title that inadvertently wired funds to defendant Warren, and it is District Title that now seeks the return of those funds based on its contract with Warren and other equitable grounds, District Title did not itself suffer the economic harm that would give rise to Article III standing because the money was ultimately owed to Wells Fargo. *Id.*; Mem. of P. & A. in Supp. of Mot. for Summ. J. at 6–7.

June 8, 2015: Defendants filed a motion to stay the discovery that was scheduled to commence as of the date of the Court's

---

2. It was also unlikely that standing would be a suitable appellate issue in the absence of any motion to dismiss filed in this Court on those grounds.

3. Defendants' pleadings have subsequently informed the Court that Day is suffering from leukemia. *See* Opp. to Mot. for Sanctions [Dkt. # 71] at 5.

June 4, 2015 Scheduling Order. Mot. to Stay Disc. [Dkt. # 44]. Notwithstanding defendants' previous position that discovery should begin after the Court ruled on the motions to dismiss and to compel arbitration, defendants took the position that discovery could not proceed until their motion for summary judgment on standing grounds had been resolved. *Id.* at 1.

June 15, 2015: The Court denied the motion to stay discovery. Mem. Op. & Order (June 15, 2015) [Dkt. # 46]. The Court restated its previous conclusion that "there can be little doubt that plaintiff has standing to pursue its claims here," *id.* at 6, in light of the undisputed existence of a contract between plaintiff and defendant Warren, and the evidence that defendants' conduct has exposed plaintiff to harm that is "imminent" and "concrete and particularized." *Id.* at 6–7, quoting Mem. Op. & Order (Jan. 9, 2015) at 9. The Court found that defendants had offered "no new information that would alter the Court's view that the standing argument is unlikely to succeed on the merits," and that plaintiff was "entitled to embark on discovery" without further delay. *Id.* at 7.

July 30, 2015: The Court denied defendants' motion for summary judgment and reiterated its previous finding that plaintiff had standing to pursue its case. Order (July 30, 2015) [Dkt. # 50]; Mem. Op. (July 30, 2015) [Dkt. # 51].

July 30, 2015: The Court held a teleconference to address the fact that defendants and their counsel were refusing to respond to plaintiff's discovery requests or to otherwise cooperate with the discovery process. Min. Entry (July 30, 2015). During the teleconference, plaintiff represented that it had propounded discovery on June 11, 2015. Defendants offered no justification other than pure defiance, and they again advanced the argument that the Court had erred in its jurisdictional ruling. At no time did counsel indicate that either defendant was too ill to proceed.

July 30, 2015: The Court then issued an Order that set forth a revised discovery schedule, required defendants to respond to plaintiff's discovery requests by August 7, 2015, and ordered that defendants submit to depositions between August 10, 2015, and August 18, 2015, on dates of the plaintiff's choosing. Order (July 30, 2015) [Dkt. # 53] at 1. The Court admonished defendants and their counsel that "failure to cooperate with the discovery proceedings may result in Rule 37 sanctions and/or a finding of contempt." *Id.* at 2. The Court also ordered plaintiff to file notices informing the Court of the status of defendants' cooperation with the August 7 and August 18 deadlines. *Id.* at 1.

August 4, 2015: The Court of Appeals affirmed the Court's ruling on the preliminary injunction. The Court of Appeals explained that the Court "correctly concluded a preliminary injunction was justified because appellee [plaintiff] established it is likely to succeed on the merits of its claims and likely to suffer irreparable harm if the injunction were not granted, and the balance of equities and the public interest support granting interim relief to preserve the status quo by enjoining appellants [defendants] from further dissipating funds to which they are not entitled." Mandate of the U.S. Court of Appeals [Dkt. # 74] at 1 (citation omitted).

August 4, 2015: Defendants filed a motion for reconsideration of the denial of their motion for summary judgment, Mot. for Recons. of Denial of Summ. J. [Dkt. # 54], which the Court denied on August 11, 2015. Order (Aug. 11, 2015) [Dkt. # 56].

August 5, 2015: Pursuant to the Court's July 30, 2015 Order, plaintiff noticed the deposition of defendant Warren for August 12, 2015, and the deposition of defendant Day for August 14, 2015. Ex. 2 to Pl.'s Reply to Defs.' Resp. to Court's Order of Aug. 11, 2015 [Dkt. # 60-2] at 4. These depositions were postponed, however, after counsel for defendants informed plaintiff that the defendants would not be present. *See id.* at 1–2.

August 10, 2015: Plaintiff filed a notice informing the Court that it had not received any discovery responses from defendants. Pl.'s Notice Regarding Aug. 7, 2015 Deadline [Dkt. # 55] at 1. So, on August 11, 2015, the Court ordered counsel

for defendants to show cause why he should not be held in contempt. Order (Aug. 11, 2015) [Dkt. # 58]. Plaintiff ultimately obtained defendants' discovery responses on August 13, 2015. Pl.'s Notice Regarding Order of Aug. 12, 2015 [Dkt. # 61].[4]

August 11, 2015: Defendants filed a writ of prohibition in the D.C. Circuit which sought, once again, to challenge the Court's jurisdiction to hear this matter. *In re Warren*, No. 15–5225 (D.C. Cir. Aug. 11, 2015) [Dkt. # 1].

August 17, 2015: The parties filed a joint motion to extend the deadline for the depositions of the defendants until August 19, 2015. Joint Mot. to Extend Dates [Dkt. # 66]. The memorandum in support of the motion stated that "the parties have now agreed that the deposition of Anita K. Warren will occur on Tuesday, August 18, 2015 at her home ... [and] that the deposition of Timothy Day will occur on Wednesday, August 19, 2015 at the offices of Plaintiff's counsel." Mem. of P. & A. in Supp. of Joint Mot. to Extend Dates [Dkt. # 66–1] at 1–2. The Court granted the motion on the day it was filed, and it ordered counsel for plaintiff to file a notice by August 20, 2015, to inform the Court of the status of the depositions. Min. Order (Aug. 17, 2015).

August 20, 2015: Plaintiff filed a notice informing the Court that the deposition of defendant Warren had taken place as scheduled, but that defendant Day failed to appear for his deposition on August 19, 2015. Pl.'s Notice Regarding Deps. [Dkt. # 67] at 1–2. The notice stated that defendants' counsel had appeared on time for the deposition, "and after waiting for thirty (30) minutes for Mr. Day to arrive," he contacted Day and learned that "Day would not be appearing for the deposition." *Id.* at 2. The transcript of the conversation that occurred between counsel that day

reflects defendants' counsel's statement that it was his "understanding [that Day] is in end-of-life hospice care, that he is heavily medicated and immobile." Ex. 7 to Pl.'s Mot. for Sanctions [Dkt. # 68–9] at 3.

October 27, 2015: The Court of Appeals rejected defendants' writ of prohibition and found that defendants "may challenge District Title's standing on appeal after a final judgment." *In re Warren*, No. 15–5225 (D.C. Cir. Oct. 27, 2015) [Dkt. # 2]. The Court of Appeals also noted that defendants "failed to demonstrate that their right to relief is 'clear and indisputable.'" *Id.*, quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (citation omitted).

In light of plaintiff's August 20, 2015 notice, the Court issued a Minute Order stating that "[a]ny motion for sanctions that plaintiff intends to file pursuant to Federal Rules of Civil Procedure 30 or 37 shall be filed by August 28, 2015." Min. Order (Aug. 20, 2015). On August 28, 2015, plaintiff filed a motion for sanctions under Federal Rules of Civil Procedure 30 and 37. Pl.'s Mot. for Sanctions [Dkt. # 68]. Plaintiff seeks: (1) a sanction of default judgment against defendant Day, Mem. of P. & A. in Supp. of Pl.'s Mot. for Sanctions [Dkt. # 68–1] at 14–16; (2) a sanction of exclusion of testimony and evidence from defendant Day, *id.* at 16–18; and (3) a sanction of reasonable legal fees and expenses against defendants and their counsel. *Id.* at 18–19. Defendants opposed the motion for sanctions on September 10, 2015, Opp. to Mot. for Sanctions [Dkt. # 71],[5] and plaintiff filed a reply on September 17, 2015. Reply to Defs.' Opp. to Pl.'s Mot. for Sanctions [Dkt. # 75].

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 37 "permits the court to use such orders 'as are just'

---

**4.** Defendants' responses were largely uninformative and non-responsive. *See, e.g.,* Def. Warren's Answer to Interrogs. [Dkt. # 62]; Def. Day's Answer to Interrogs. [Dkt. # 63]; Def. Warren's Resp. to Disc. Req. [Dkt. # 64]; Def. Day's Resp. to Disc. Req. [Dkt. # 65].

**5.** Defendants filed an initial response to the motion for sanctions on September 9, 2015, Opp. to Mot. for Sanctions [Dkt. # 70], and then a "corrected" version of that pleading on September 10, 2015. Opp. to Mot. for Sanctions [Dkt. # 71]. In this Memorandum Opinion, all citations to defendants' opposition refer to the "corrected" version filed on September 10.

to sanction a party that 'fails to obey an order to provide or permit discovery.' " *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995), quoting Fed. R. Civ. P. 37(b)(2). The court may take facts as established, strike answers or defenses, preclude the introduction of evidence, dismiss the action in whole or in part, render a default judgment, and award reasonable expenses and fees. Fed. R. Civ. P. 37(b)(2)(A)(ii), (v)–(vi); Fed. R. Civ. P. 37(b)(2)(C). The sanctions for a party's failure to attend his own deposition "may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." Fed. R. Civ. P. 37(d)(3). In addition, when a party fails to attend his own deposition, "the court *must* require the party failing to act, the attorney advising that party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified." *Id.* (emphasis added); *see also* Fed. R. Civ. P. 30(d)(2) ("The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent.").

■ Before a district court may enter a severe sanction such as a default judgment, the court must show by clear and convincing evidence that the "litigant's misconduct is accompanied by 'willfulness, bad faith, or fault.' " *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 4 (D.C. Cir. 2015), quoting *Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1458 (D.C. Cir. 1986); *see also Webb v. Dist. of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998). The court must also find that a lesser sanction "would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits." *Shepherd*, 62 F.3d at 1478.

■ The D.C. Circuit has set forth "three basic justifications that support the use of dismissal or default judgment as a sanction for misconduct." *Webb*, 146 F.3d at 971. Such sanctions are justified where: (1) the other party has been so prejudiced by the misconduct that it would be "unfair to require the other party to proceed further in the case"; (2) the party's misconduct has placed "an intolerable burden" on the court because it requires the court to "modify its own docket and operations in order to accommodate the delay"; or (3) the court finds it necessary "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074–77 (D.C. Cir. 1986).

■ Because our judicial system favors a decision on the merits of an action, before the court orders a default, the court must give a "specific, reasoned explanation for rejecting lesser sanctions" and "must state *why*, in light of the *Shea* factors, less onerous sanctions are not sufficient." *Webb*, 146 F.3d at 971–72, quoting *Shepherd*, 62 F.3d at 1478.

## ANALYSIS

The Court's Order of July 30, 2015 required that defendants submit to depositions between August 10th and 18th, 2015. Min. Entry (July 30, 2015). On August 17, 2015, after the Court reminded the parties of the deadline, the parties filed a joint motion to extend the deadline by one day—to August 19, 2015. Joint Mot. for Extension of Time [Dkt. # 66] at 1. In that joint motion, the parties represented that Warren's deposition would occur at her home in St. Mary's County, Maryland, and that Day's deposition would occur at plaintiff's counsel's office in Washington, D.C. Mem. of P. & A. in Supp. of Joint Mot. for Extension of Time [Dkt. # 66–1] at 1–2. Because defendant Day failed to appear for his deposition, Plaintiff requests that the Court enter a default judgment against him. Mem. of P. & A. in Supp. of Mot. for Sanctions at 14–16. It also requests that the Court order that defendants should not be allowed to introduce testimony or evidence from Day, and that defendants should not be permitted to object to any statements introduced by other witnesses about hearsay statements made by Day. *Id.* at 16–18.

Defendant Day now argues that plaintiff inserted the language in the joint motion about Warren and Day's depositions unilaterally, without defendants' knowledge or consent. Opp. to Mot. for Sanctions at 7. But plaintiff's exhibits discredit Day's assertion

because defendants' counsel agreed to a draft motion which included the representation to which he now objects. *See* Exs. 2, 3, 4 to Pl.'s Reply to Mot. for Sanctions. Further, Day's counsel clearly contemplated that Day's deposition would be taken in Washington, D.C. In defendants' counsel's August 14, 2015 email message to plaintiff, counsel for Day wrote: "If you insist on Day being deposed in DC it will have to be Wednesday or Thursday." Ex. 1 to Pl's. Reply on Mot. for Sanctions [Dkt. # 75–1] at 1. Defendant's argument is further undermined because his counsel appeared at both of the agreed-upon times and places for Warren's deposition in St. Mary's County, and at Day's scheduled deposition in Washington, D.C. *See* Pl's. Notice Regarding Deps. at 1–2.

Day, however, argues that his absence was not willful because he suffers from serious health problems—defendants' counsel represents that as of September 2015, Day "is now solely in palliative care, in hospice[,] and his death remains imminent." Opp. to Mot. for Sanctions at 6. The Court is sympathetic to Day's failing health, and it does not mean to minimize the seriousness of the illnesses that Day faces. However, Day's protests ring a bit hollow. Day has engaged in evasive behavior since the beginning of this action, none of which was predicated on his health.[6] Day never sought relief from the Court, and his counsel did not indicate that Day was too unwell to appear at all: instead, he asked to schedule the deposition in Washington, D.C.

The procedural history of this matter bears repeating: *After* Day failed to comply with the Court's order to participate in discovery within the discovery period, he was ordered to appear at a deposition within a specified period of time. He did not alert the Court that serious health challenges might preclude him from doing so. Instead, through his counsel's representations, he asserted that he would appear at a date, time, and place in Washington, D.C. To date, he has not provided the Court with any medical evidence that would justify his failure to appear. For those reasons, the Court concludes that Day willfully failed to appear for his deposition, in violation of the Court's order. *See Reliable Limousine Serv.*, 776 F.3d at 4 (default judgment is inappropriate unless defendant's "misconduct is accompanied by willfulness, bad faith, or fault") (quotation omitted); *see also Webster*, 802 F.2d at 1458 (noting that the court has found "little trouble in finding the requisite bad faith or fault" where a party fails to appear for a deposition "without an attempt at explanation"). The Court therefore considers the *Shea* factors to determine whether a default judgment is appropriate.

### A. The Plaintiffs Have Been Prejudiced by Day's Delays

██ Under the first *Shea* factor, the Court must consider whether "the other party in the case has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case." *Shea*, 795 F.2d at 1074. "Delay that merely prolongs litigation 'is not a sufficient basis for establishing prejudice.'" *Reliable Limousine Serv.*, 776 F.3d at 5, quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990). Instead, the party must show that the offending party's behavior "has severely hampered the other party's ability to present [their] case." *Webb*, 146 F.3d at 971.

Plaintiff has unquestionably been prejudiced by Day's delays. Plaintiff has been attempting to take depositions since late April, 2015, when plaintiff first became aware of a potential medical issue. Months have gone by, and Day has continued to avoid his deposition. Defense counsel now suggests that plaintiff never moved to compel Day's testimony, and never requested a telephonic deposition or a deposition by written questions. Opp. to Mot. for Sanctions at 6–7. However, defendant was twice ordered to

---

6. The Court has detailed Day's evasive tactics in previous decisions. *See* Order (12/15/14) at 11–12. For example, Day asserted that this Court should not exercise personal jurisdiction over him, because he had no ties to the District of Columbia. *Id.* at 9–12. Yet he presented a valid D.C. driver's license, with a D.C. address, as identification when he purchased property in August, 2014. *Id.* Separately, Day tried to tell the court in Maryland that the action there—where he now lives—was too inconvenient because the dispute was centered in D.C. *Id.* at n.3 (describing the "irony" in these conflicting defenses).

appear for a deposition, and Day's counsel ultimately agreed that Day would appear for live testimony. If Day required an accommodation due to his health, his counsel could have requested those accommodations long before this Motion for Sanctions was filed.

This delay is unjustified; the longer District Title was forced to wait to prove its case, the longer that District Title must wait to retrieve the money that it alleges is owed. For that reason alone, Day's delay has clearly and severely prejudiced the plaintiffs. *See Reliable Limousine Serv.*, 776 F.3d at 5.

### B. The Judicial System Has Not Been Prejudiced

 Dismissal may alternatively be appropriate where "the delay or misconduct would require the court to expend considerable judicial resources in the future in addition to those it has already wasted, thereby inconveniencing many other innocent litigants in the presentation of their cases." *Shea*, 795 F.2d at 1075–76. District courts possess substantial discretion to decide whether remedial action less than dismissal or default would be overly burdensome. *Id.* at 1076. The Court has unquestionably been burdened by defendants' failure to adequately participate in discovery throughout the lifecycle of this lawsuit. The D.C. Circuit has held that "[l]itigants who are willful in halting the discovery process . . . in this era of crowded dockets . . . deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism." *Reliable Limousine Serv.*, 776 F.3d at 5, quoting *Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 691 (D.C. Cir. 1987).

However, the Court will not rely on this factor to support its decision to issue a default judgment because the Court cannot conclude that the burden has been "intolerable." *See Webb*, 146 F.3d at 971. To be sure, the Court has expended significant resources on this matter in responding to Day's discovery deficiencies. Indeed, the Court took the unusual step to require that the parties file defendants' interrogatory responses with the Court so that the Court could assess their sufficiency. Min. Order (Aug. 14, 2015). However, because the Court cannot find by clear

and convincing evidence that innocent litigants have been inconvenienced by Day's recalcitrance, the Court will not issue a default based upon this factor alone. *See Shea*, 795 F.2d at 1075–76.

### C. The Court Must Deter Similar Misconduct

 Finally, "[t]he third and most common rationale for dismissal in cases of attorney misconduct or delay has been the District Court's expressed need to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." *Id.* at 1077. Sanctions based on deterrence "call for careful evaluation to ensure that the proper individuals are being sanctions (or deterred) and that the sanctions or deterrent measures are not overly harsh." *Id.* The court should take care to align the sanction with the gravity of the misconduct, and avoid a "pointless exaction of retribution." *Jackson v. Wash. Monthly Co.*, 569 F.2d 119, 123 (D.C. Cir. 1977).

The Court finds that Day's disregard for the Court's orders must be sanctioned in order to deter Day and future litigants from similar misconduct. The Court has issued two Orders and held a conference, all on the issue of Day's unwillingness to submit to a deposition. If the Court does not act with clarity, Day and other litigants may presume that they may flaunt their discovery obligations and the Court's orders without severe consequence. The sanction will be shared in part with counsel since the ongoing disregard for the Court's rulings appears to have been a matter of deliberate strategy on the part of the entire defense team.

Further, the Court is satisfied that imposing some portion of the sanction against Day himself would adequately punish the party at fault for the discovery malfeasance. *See Shea*, 795 F.2d at 1077. The Court notes that although Day's counsel appeared on the date and time that the parties had scheduled for Day's deposition, Day himself did not appear. Pl.'s Notice Regarding Deps. at 2. The Court also notes that Warren appeared for her deposition as scheduled. *Id.* It therefore seems clear that sanctions related specifically

to the day of the deposition itself should be focused on the party who did not appear.

### D. The Entry of a Default Judgment Would Be Appropriate

■■■ Day avoided service and then discovery in this case, and he repeatedly attempted to delay the proceedings with repetitive motions. In *Reliable Limousine*, the D.C. Circuit reasoned that after the district court had already moved the discovery deadline twice, the district judge could order a default, because the judge had "no reason to expect that, if granted yet another continuance, [defendant] would meet his discovery responsibilities." 776 F.3d at 5–6, citing *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) ("[T]hree strikes are more than enough to allow the district court to call a litigant out"). Here, Day has plainly demonstrated that he has no intention of participating in discovery, and a lesser sanction would not be likely to ensure Day's compliance with future orders of the Court.

But while the Court believes it would be justified in entering a default against Day as a sanction in this case, it need not do so given its entry of summary judgment in favor of the plaintiff, based in part on defendants' failure to come forward with any evidence that would give rise to a genuine issue of material fact and their decision to reargue the legal matters that have long since been put to rest in this case instead.

So what should the sanction be? The Federal Rules require that when a party fails to attend its own deposition, "the court *must* require the party failing to act, the attorney advising that party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified." Fed R. Civ. P. 37(d)(3) (emphasis added). Here, Day, after repeatedly violating the Court's order that discovery must proceed, finally agreed to a specific date and time notwithstanding the medical issues he may face. Because Day failed to appear without advance notice, monetary sanctions are justified.

Accordingly, the Court will require Day to pay the reasonable expenses, including attorney's fees, that plaintiff incurred for the day of Day's scheduled deposition, including the cost to secure the services of a court reporter for the purpose of the deposition.

Also, in an exercise of the Court's discretion, Day and his counsel must each pay half of the reasonable expenses, including attorney's fees, related to the telephone conference dated July 30, 2015, all of the docketed notes and pleadings concerning discovery thereafter, and the filing of this Motion for Sanctions. Counsel for plaintiff shall submit a petition setting out the appropriate fees and costs by December 11, 2015. The Court specifically finds that counsel's failure to participate in discovery—notwithstanding the Court's unequivocal denial of the motion to stay discovery and subsequent unequivocal ruling on the motion for summary judgment—was not in good faith.

### CONCLUSION AND ORDER

Accordingly, it is:

**ORDERED** that plaintiff's [Dkt. # 68] Motion for Sanctions is **GRANTED IN PART**; and it is

**FURTHER ORDERED** that defendant Day shall pay the reasonable expenses, including attorney's fees, that plaintiff incurred for the day of Day's scheduled deposition, including the cost to secure the services of a court reporter for the purpose of the deposition; and it is

**FURTHER ORDERED** that defendant Day and his counsel must each pay half of the reasonable expenses, including attorney's fees, related to the telephone conference dated July 30, 2015, all of the docketed notes concerning discovery thereafter, and related to the filing of this Motion for Sanctions. Plaintiff shall file its motion for attorney's fees on or before December 11, 2015 [7].

**SO ORDERED.**

7. The Court has also ordered defendant Warren

to pay the reasonable attorney's fees that plaintiff

has incurred in prosecuting the breach of contract claim. *See* Order (Nov. 13, 2015) [Dkt. # 79] at 1. Plaintiff shall file a consolidated fee petition that itemizes the attorney's fees it incurred for the breach of contract, and for the discovery sanctions.